UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BASHIR CHAUDRY, and ZAFAR SHEIKH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 17 C 1813 |
| | ) | |
| NASSER MUSLEH, FERAS MUSLEH, | ) | Judge Thomas M. Durkin |
| MOHAMMAD HAMMADAH MUSLEH, | ) | |
| GEORGE IVANCEVICH, and JOHNSON, | ) | |
| STRACCI & IVANCEVICH, LLP, | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opinion and Order**

In the fall of 2014, plaintiff Bashir Chaudry received a "cold call" from defendant Naser Musleh, who, at the time, owned a supermarket called Central Market in Lake Station, Indiana along with his sons Feras and Mohammad Musleh, who are co-defendants in this case ("the Musleh defendants"). Naser had heard, allegedly from an Illinois-based brokerage firm, that Chaudry and co-plaintiff Zafar Sheikh ("plaintiffs") were looking to buy a grocery business. Naser Musleh informed Chaudry on this call that he was selling Central Market because of his declining health and desire to spend more time with his family. According to the complaint, this turned out to be the first of many lies the Musleh defendants told the plaintiffs.

The plaintiffs were skeptical of purchasing a business so far from their home in the Chicago area, but after hearing Naser describe Central Market as a flourishing grocery enterprise, they drove the approximately 55 miles from Lincolnwood, Illinois to Lake Station, Indiana to see it. Naser and his sons showed

1

the plaintiffs around the store and talked them through the "ins and outs" of the business. Several more meetings, in person and by phone followed, as did "hundreds" of emails. The plaintiffs allege that the business "described by the [Musleh] Defendants seemed too good to be true and the Plaintiffs didn't want to wait [any] further" to purchase what they believed to be a thriving grocery store.

During the closing process, the Musleh defendants, along with their attorney and co-defendant Ivancevich (together with his law firm, Johnson, Stracci & Ivancevich, LLP, "the attorney defendants"), made the following representations, upon which the plaintiffs allege to have relied:

- That the roof on the Central Market was new and in excellent condition;
- That a substantial amount of income could be earned by redeeming customer coupons;
- That on a going-forward basis, union employees would pay their own health insurance premiums;
- That the merchandise markup was 35%-38%; and
- That the refrigeration rack system was in proper working order.

None of these things were true, but the plaintiffs did not discover that they were false until after the sale closed.

The plaintiffs assert various common law and statutory claims for fraud, unjust enrichment and deceptive business practices.[1] They do not expressly assert a breach of contract claim, as the actual purchasing entity was an LLC. The contract

---

[1] In their claim for deceptive business practices, the plaintiffs seem to allege violations of the criminal mail and wire fraud statutes, 18 U.S.C. § 1341 and 18 U.S.C. § 1343. Neither creates a private right of action. *See Kathrein v. McGrath*, 166 Fed. Appx. 858, 863 (7th Cir. 2006); *see also Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, 1378 (N.D. Ill. 1996) (collecting authority).

2

for sale is nevertheless the central basis of their alleged damages. The plaintiffs also assert a claim under the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. § 1961, *et seq.*, alleging that prior to the sale of Central Market, the defendants used the United States mail and telephone lines to "tender[ ] Coupons illegitimately and pad[ ] their scanning sales items." The Musleh defendants move to dismiss for lack of personal jurisdiction and on the ground that the plaintiffs lack standing as non-signatories to the contract for the sale of Central Market. The attorney defendants argue that venue is improper in this district and move to dismiss the case or transfer it to the Northern District of Indiana. They also seek, in their reply brief, to add the argument that the Court lacks personal jurisdiction over them.[2]

**Discussion**

A. <u>Subject Matter Jurisdiction</u>

A federal district court is required to independently examine whether it has jurisdiction before reaching the merits of any claim. *Hammes v. AAMCO Transmissions,* 33 F.3d 774, 778 (7th Cir. 1994). The plaintiffs assert that the Court has federal question jurisdiction in light of the RICO claim, as well as diversity

---

[2] The attorney defendants also suggest in their reply that the Court should strike the parts of the plaintiffs' response that accuse them of misleading the Court, and should sanction the plaintiffs for impugning their ethics. After reading the plaintiffs' response, the Court never considered that the attorney defendants engaged in any misconduct with respect to representations the they made in their opening brief. Therefore, to the extent the attorney defendants move to strike and for sanctions, those motions are denied.

3

jurisdiction, because the plaintiffs are from Illinois, the defendants are from Indiana, and the amount in controversy exceeds $75,000.

1. Federal Question Jurisdiction

There is no federal question jurisdiction because the plaintiffs do not have a cause of action under RICO. Under RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c). The Supreme Court has held that to be entitled to sue under RICO, it is not enough for a plaintiff to allege that he was harmed by "any act" related to, or even in furtherance of a RICO conspiracy, but instead he must allege that his injury was proximately caused by "an act of racketeering." *See Beck v. Prupis*, 529 U.S. 494, 505 (2011) ("[W]e conclude that injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action."); *see also DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011) (explaining that the phrase "by reason of" in § 1964(c) "requires a showing of 'but for' causation and proximate cause"). In other words, "[a] cause of action under § 1964(c) requires a plaintiff to plead (1) an injury in its business or property (2) by reason of (3) the defendants' violation of section 1962." *DeGuille*, 664 F.3d at 198 (citation omitted). The plaintiffs do not indicate which provision of § 1962 their claim is based upon, but the Court construes their allegations to assert a violation of § 1962(c), which forbids conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity.

4

Specifically, the complaint alleges that the defendants conspired to, and did, collect thousands of dollars in coupon proceeds to which they were not legally entitled "by tendering coupons illegitimately" to the Illinois Food Retailer Association through the interstate mails and wires. The direct victim of that fraud was the Illinois Food Retailer Association. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (holding that the direct victim of a retailer's racketeering scheme to increase profit margins by not charging sales tax and falsifying tax records was the state, not the retailer's competitor). The plaintiffs allege that they also were harmed, not by the acts of mail and wire fraud, but by the defendants' failure to disclose the unlawful nature of their coupon redemption operation and the true (nominal) value of legitimate coupon redemption to the overall business of Central Market. *See* R. 1 ¶ 87 (referring to the defendants "false representations" and "concealment and suppression of facts"). Because "[t]he cause of [the plaintiff's] asserted harms . . . is a set of actions . . . entirely distinct from the alleged RICO violation," *Anza*, 547 U.S. at 458, theirs is "not a compensable injury flowing from a violation of [§ 1962(c)]," *id.* at 457. The plaintiffs therefore have not alleged a cause of action under RICO and their claim must be dismissed.

This is not the only fatal defect in the plaintiffs' RICO claim. The plaintiffs have also failed to allege exactly how the alleged scheme to defraud the Illinois Food Retailer Association was accomplished. Construing the complaint broadly and in the plaintiff's favor, the Court gathers that the alleged scheme involved at least one of the Musleh defendants "tendering coupons illegitimately" across state lines for

redemption, and defendant Ivancevich following-up on that tender by calling the Illinois Food Retailer Association and "shak[ing] them down." R. 1 ¶¶ 9-10. From these allegations, the Court has no idea what the defendants are alleged to have done wrong. Were the coupons fabricated? Were they stolen? What made the tender "illegitimate" and what did Ivancevich say on those calls to convince the Illinois Food Retailer Association to pay the defendants many multiples of what they were actually owed on the coupons? Allegations of fraud in civil RICO claims are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to plead all averments of fraud with particularity. Fed. R. Civ. P. 9(b); *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 681 (N.D. Ill. 2012). To plead with particularity means to allege "the who, what, when, where, and how" of the alleged fraud. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 574, 569 (7th Cir. 2012). "Strict adherence to the particularity requirement is especially important in a case such as this where the predicate fraud allegations provide the only link to federal jurisdiction." *Guaranteed Rate*, 912 F. Supp. 2d at 684. The plaintiffs have not met this pleading burden, having only vaguely alleged a rather implausible scheme. For this reason, too, the claim is dismissed.[3]

2. <u>Diversity Jurisdiction</u>

Without federal question jurisdiction existing, the Court turns to the question of diversity jurisdiction. In examining the complaint and the parties' motion papers,

---

[3] There are other reasons the RICO claim fails. For example, the complaint has not adequately pled the existence of an "enterprise" to which all of the defendants, including Ivancevich, were a part. Nor does it allege that each of the defendants personally committed a pattern of racketeering activity.

6

the Court became aware that 3232 Central Avenue, LLC ("the LLC")—an entity comprised not of the plaintiffs, but of certain of their family members—was the actual purchaser of Central Market. The LLC is an Indiana limited liability corporation. If the LLC were to be joined as a necessary party in this case, the citizenship of its members would need to be considered to determine diversity. Believing that a judgment in this case could impact and potentially prejudice the LLC and the defendants if the LLC were not joined, the Court asked the parties to brief whether, under Federal Rule of Civil Procedure 19, the LLC was a necessary party to this lawsuit, and if so, whether its joinder would destroy diversity.

Having reviewed the parties' supplemental briefs, the Court finds that the LLC is a necessary party that can feasibly be joined in this case. Rule 19(a)(1)(B) provides, in relevant part, that a person "must be joined as a party if that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). "[T]he most frequent necessity for an absent plaintiff arises when a co-holder of a joint right seeks to litigate the validity of that right," but an absentee plaintiff "only needs to have an interest *relating* to the subject of the action" to be a necessary party under Rule 19. *Gottlieb v. Vaicek*, 69 F.R.D. 672, 677 (N.D. Ill. 1975) (finding that where two of three limited partners instituted a lawsuit against the general partner for

7

rescission of their interests in the partnership, the case could not proceed without joinder of the absentee limited partner); *see also Wright v. Incline Vill. Fen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1210 (D. Nev. 2009) (holding that third-party beneficiaries of a contract were necessary, and likely indispensible to the signatory's lawsuit arising from that contract).

The nearly $2,000,000 bank loan to purchase Central Market, which the plaintiffs claim as part of their damages, was extended to the LLC based on the credit and guarantees of its members, not the plaintiffs. Thus the LLC is legally obligated to make payments on the loan and it is the LLC that will be damaged if the business fails. The plaintiffs concede as much. *See* R. 55 at 6 ("A default of almost a two million dollar loan will have devastating results for one Plaintiff's son, and the other Plaintiff[']s brother and sister-in-law."). Even though the LLC would not be bound by any judgment in this case, principles of preclusion could impact its ability to argue fraud or unfair conduct in the negotiation of the Central Market deal in a subsequent lawsuit. The LLC may also be precluded from seeking certain categories of damages if those damages would either be duplicative of or somehow inconsistent with a judgment in this case. In addition, because the LLC would be free to file a lawsuit of its own if not joined here, non-joinder would leave the defendants vulnerable to a second suit on essentially the same claims. Finally, Rule 19(a)(1) "furthers the interests not only of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter." *Evergreen Park N. & C. Home, Inc. v. Am. Equity Assurance Co.*, 417 F.3d 1113, 1115 (7th Cir.

1969). Because a resolution of the plaintiffs' claims may not fully resolve all questions of liability arising from the sale of Central Market, particularly those relating to the contract for sale, the LLC is a necessary party.

The plaintiffs argue two reasons why joinder is not necessary. The first is that their interests are so thoroughly aligned with the LLC's that "[a] judgment in favor of the Plaintiffs will satisfy the loan and save the LLC members credit and assets." R. 55 at 7. But if this case ends in a judgment for the defendants, or a partial judgment insufficient to satisfy the loan, the LLC will be adversely affected without having participated in this suit. This is precisely why joinder *is* necessary in this case. *See Gottlieb*, 69 F.R.D. at 677 ("Where, as in the instant case . . . the holding of parallel interests is so closely linked that adjudication of one interest legal determines the rights of the other, then the requirements of [Rule 19(a)(1)] are satisfied."); *see also Norvell v. McGraw-Edison Co.*, 270 F. Supp. 57, 58 (E.D. Wisc. 1967) (finding joinder required because "[i]t might well be assumed, but it is not absolutely clear at this time, that the interests of [the plaintiff] and [the absentee party] are precisely the same").

The plaintiffs' second argument is that one of the members of the LLC, Sean Sheik, is currently living in New York City, and the other, Bushra Naseer, is currently living in Pakistan. R. 55 at 6. They contend that "[t]his geographical distance of the LLC members, thousands of miles away from the place of litigation makes it impractical for them to meaningfully join this controversy." *Id.* But it is the LLC, not its members, that is being joined in this matter. And, because "a

9

limited liability company, like a corporation, cannot litigate pro se or be represented in the litigation by a non-lawyers," *1756 W. Lake St. LLC v. Am. Chartered Bank*, 787 F.3d 383, 385 (7th Cir. 2015), the LLC must retain a lawyer.[4] Doing so will facilitate the participation of the members of the LLC, to the extent necessary, even from afar.

The Court next considers whether joinder of the LLC is feasible. Under Rule 19(a)(1), joinder of a necessary plaintiff is feasible as long as it does not destroy diversity. *See* Fed. R. Civ. P. 19(a)(1). Here, it does not:

> Because the overriding goal in crafting a jurisdictional rule is simplicity, the courts have held that all corporations are to be treated

---

[4] The attorney defendants point out in their reply brief that Sheikh appears to have responded to the motions to dismiss both for himself and his co-plaintiff, Chaudry. R. 51 at 2. A pro se plaintiff cannot represent his co-plaintiff. *See Love El v. City of Chicago*, 2013 WL 3874067, at *1 (N.D. Ill. July 25, 2013) (citing *Strong Delivery Ministry Ass'n v. Bd. of Appeals of Cook Cnty.*, 543 F.2d 32, 34 (7th Cir.1976); *Lindstrom v. State of Illinois*, 632 F. Supp. 1535 (N.D. Ill. 1986)). The Court also understands that the co-plaintiffs in this case were adverse in a related case before another court in this district, though that case was dismissed for lack of subject matter jurisdiction because Sheikh and Chaudry were not diverse, and that court found Chaudry indispensable to Sheikh's claims. *See Sheikh v. Naseer*, No. 17 C 4074, at R. 1 (N.D. Ill.) (complaint seeking an accounting of the Central Market grocery business); *id.* at R. 8 (denying Scheikh's motion to reopen case because "it does not appear from the complaint on file or the plaintiff's motion that the defendant that the plaintiff says he would drop . . . is dispensable"). It is notable that among Chaudry's co-defendants in that case was Bushra Naseer, who is a member of the LLC joined by this Order. This again points to the necessity of adding the LLC to this case in the litigation's present posture, as there is no assurance that the LLC's interests will be protected otherwise.

The co-plaintiffs may proceed in this matter pro se, but each must sign every pleading and motion in accordance with Federal Rule 11. Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and othe paper must be signed . . . by a party personally if the party is unrepresented."). To the extent the co-plaintiffs' interests may be adverse in this case, which is certainly suggested by the *Sheikh v. Nasser* case, the Court advises them to consider retaining separate counsel.

10

alike for diversity purposes: all are citizens both of the state of incorporation and the state in which the corporation has its principal place of business . . . The citizenship for diversity purposes of a limited liability company, however, despite the resemblance of such a company to a corporation (the hallmark of both being limited liability), is the citizenship of each of its members.

*Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006) (citations omitted). Though 3232 Central Avenue LLC is an Indiana limited liability company that owns a business located in Indiana, neither of its members is an Indiana resident—Sean Sheikh is a resident of Illinois but is living in New York, and Bushra Naseer is also a resident of Illinois, living, for the time being, in Pakistan. The citizenship of the members of the LLC does not destroy diversity, and thus joinder is feasible.

Under Rule 19(a)(2), a court may sua sponte order that a necessary party be joined. *See Parkview v. Dep't of Amy Corps of Eng'rs*, 85 F.R.D. 145, 148 (E.D. Wisc. 1980); *see also Consumers Union of U.S., Inc. v. Consumer Prod. Safety*, 590 F.2d 1209, 1220 n. 56 (D.C. Cir. 1978) ("[A] court may and should, if justified, examine the issue of Rule 19 sua sponte."). The Court does so now, ordering 3232 Central Avenue, LLC to be joined as a plaintiff in this case. If the LLC does not appear as ordered, the Court will consider whether to dismiss the case pursuant to Rule 19(b).

Subject-matter jurisdiction no longer being a concern—provided the LLC joins this case as ordered—the Court turns to the defendants' arguments for dismissal or transfer.

B. Personal Jurisdiction

The Musleh defendants argue that as Indiana residents who sold an Indiana business to an Indiana LLC, they are not subject to the personal jurisdiction of this

11

Court. The attorney defendants also raised the issue of lack of personal jurisdiction, but did so in their reply brief. It is axiomatic that arguments raised for the first time in a reply brief are waived, "and rightly so given the lack of opportunity for the other party to respond to them." *Peterson v. Vill. of Downers Grove*, 103 F. Supp. 3d 918, 925 (N.D. Ill. 2015) (citing *Carroll v. Lynch*, 698 F.3d 561, 564 n. 4 (7th Cir. 2012)). Indeed, Rule 12(h) explicitly provides that the defense of lack of personal jurisdiction is waived if omitted from a motion to dismiss. Fed. R. Civ. P. 12(h)(1); *see also Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008) ("[T]he defense of personal jurisdiction can be waived if not timely asserted.").

Still, "Rule 12(h)(1) . . . does not in any way prevent a judge in his discretion from permitting a party to expand the grounds of a motion well in advance of a hearing." *Bechtel v. Liberty Nat. Bank*, 534 F.2d 1335, 1341 n.8 (9th Cir. 1976), *accord Fed. Deposit Ins. Corp. v. Hartford Ins. Co. of Ill.*, 877 F.2d 590, 591 (7th Cir. 1989). Therefore, the Court will allow the attorney defendants to expand the basis for their motion to dismiss by arguing the issue of personal jurisdiction in their reply brief. However, because the plaintiffs have not had an opportunity to respond to the attorney defendants' personal jurisdiction arguments, and because those arguments may change for all of the defendants with the joinder of the LLC, the Court will not decide that issue at this time. *See Cross v. Simons*, 729 F. Supp. 588, 590 n. 1 (N.D. Ill. 1989) (holding that a defendant could amend its motion to dismiss to include a lack of personal jurisdiction defense as long as "the court had not yet ruled on the defendants' motion to dismiss and [ ] the plaintiff was given an

opportunity to respond to the newly asserted defense"). The defendants are to raise their personal jurisdiction arguments, if they so choose, when they answer or move to dismiss the amended complaint.

C. <u>Venue</u>

The defendants all argue that venue is improper in this district. At the last status hearing, the defendants informed the Court that they cited authority in a footnote to their supplemental Rule 19 brief about when the venue issue should be decided before subject-matter jurisdiction. That brief has one footnote that cites one case: *HS Resources, Inc. v. Wingate*, 327 F.3d 432 (5th Cir. 2003). Nothing in *HS Resources* bears on the proper sequencing of threshold decisions regarding jurisdiction. *Id.* (affirming the district court's Rule 19 joinder analysis in a declaratory judgment action concerning a dispute over royalty payments on a natural gas well, but never mentioning anything about venue or personal jurisdiction).

The Court believes that the defendants may instead have been referring to *Askew v. Sheriff of Cook County*, 568 F.3d 632 (7th Cir. 2009), since it is the case cited immediately after the only appearance of the word "venue" in their brief. R. 53 at 4. In *Askew*, the Seventh Circuit held, among other things, that before a district court dismisses a case for failure to join a necessary party, it should consider whether the absentee party will have a valid objection to venue if joined. *Id.* at 635-36. If the party would have no such objection, the Seventh Circuit explained, the proper course is to order joinder and proceed to the merits, not to dismiss the case

13

for failure to join the absentee party in the first place. *Id.* at 636. This principle has no bearing on the sequencing of the Court's jurisdictional decisions in this case. If anything, it supports this Court's approach to considering whether the absence of a necessary party requires dismissal under each subsection of Rule 19 before proceeding to other, potentially unnecessary issues in this case.

The defendants are correct, however, that there are circumstances when a district court can decide venue outright, even without first examining its subject matter jurisdiction: if "[t]he relative ease of determining venue" promotes "judicial economy," then the court "has leeway to choose among threshold grounds for denying audience to the case on the merits." *In re: Limitnone, LLC*, 551 F.3d 572, 576 (7th Cir. 2008) (internal quotation marks omitted) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007)). The defendants contend that the case against venue in this district is so strong that it can be determined with relative ease. They move to transfer under 28 U.S.C. 1406(a) on the basis that venue is improperly laid in this district, and also under 28 U.S.C. 1404(a) on the basis that the Northern District of Indiana, located just across the border from this district, is a more convenient forum.

The Court disagrees that the defendants' venue arguments are so strong that transfer at this time can be determined with relative ease and would serve the interest of judicial economy. Under 28 U.S.C. § 1391(a)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." "A 'substantial part' of the events can occur in more than one

place . . . The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 2008 WL 5423553, at *2 (N.D. Ill. Dec. 29, 2008) (quoting *TruServ Corp. v. Neff,* 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998)). "[W]here the underlying events are essentially communications made by two parties located in separate districts, the requirements of § 1391(b)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." *Imperial Crane Servs., Inc. v. Cloverdale Equip. Co.*, 2013 WL 5904527, at *3 (N.D. Ill. Nov. 4, 2013) (internal brackets and quotation marks omitted) (quoting *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.,* 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003).

The plaintiffs allege, and the defendants do not dispute, that "hundreds" of emails and text messages about the Central Market were sent between Indiana and Illinois. The plaintiffs allege that those communications were fraudulent, and formed the basis of their injury. The plaintiffs also allege that the Musleh Defendants sent fraudulent financial records and made other misrepresentations to the Illinois-based lender that financed the LLC's purchase of Central Market. The defendants spend little time on these allegations, pointing instead to the more numerous connections between the facts underlying the complaint and Indiana. In view of the causes of action, the quality of the contacts with the forum, and not the

15

quantity of the contacts, will ultimately control the Court's venue analysis under 28 U.S.C. § 1406. It is not obvious to the Court that venue is only appropriate in the Northern District of Indiana such that the Court should immediately transfer the case without first seeing the joinder issue to its resolution.

Nor does the convenience of the parties weigh so thoroughly in favor of one side as to make a ruling under 28 U.S.C. § 1404 easy to resolve. The plaintiffs' choice of venue is entitled to substantial deference, numerous witnesses are located in both Illinois and Indiana, and none of the parties can credibly claim substantial burden when the courthouse for this district is located just 20 miles from the Hammond Division of the Northern District of Indiana, where the defendants represent this case would be venued if transferred. R. 37 at 4; R. 50 at 4. Under the circumstances of the present case, therefore, the Court declines to decide jurisdictional questions out of order and after a venue analysis. *See In re Limitnone, LLC*, 551 F.3d at 578 ("Our holding today should not be read to suggest that district courts may in every case decide venue in advance of subject-matter jurisdiction without due consideration of whether it is advisable to do so.").

**Conclusion**

For the foregoing reasons, the RICO claim is dismissed without prejudice. The Court hereby joins 3232 Central Avenue LLC as a plaintiff. The LLC must file its appearance through counsel within 30 days of the date of this order. *See United States v. Alacran Constracting, LLC*, 2015 WL 7753069, at *2 (N.D. Ill. Dec. 2, 2015) (providing that an LLC must be given "a reasonable opportunity to retain a lawyer"

16

before being defaulted or having its case dismissed for failure to do so) (citing *United States v. Hagerman*, 549 F.3d 536, 538 (7th Cir. 2008)). The motions to dismiss for lack of jurisdiction and venue, R. 44 and R. 45, are denied as moot in light of the Court's ruling, though all objections to personal jurisdiction and venue are preserved by this ruling. This case is set for a status hearing on October 6, 2017 at 9:00 a.m. If the LLC has not appeared through counsel by that time, the parties should be prepared to argue why the case should not be dismissed. If the LLC does appear, then counsel, together with the pro se plaintiffs, should be prepared to discuss whether they intend to file an amended complaint and, if so, the time they need to do so.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 5, 2017